**FILED**

**APR 05 2011**

[Clerk signature/stamp]

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| ON THE CHEAP, LLC, d/b/a, TRU FILTH, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> DOES 1-5,011, <br><br> Defendants. | CIV. 11-MC-36 <br><br> **BRIEF IN SUPPORT OF MOTION TO QUASH AND OBJECTIONS TO SUBPOENA** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

COMES NOW Midcontinent Communications, a non-party to the above-entitled matter, which has been served with a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, and respectfully submits this Brief in Support of its Motion to Quash and Objections to that Subpoena.

### Factual Background

Midcontinent Communications is a telecommunications company located in Sioux Falls, South Dakota. *See* Johnson Aff. at ¶ 2. Midcontinent provides internet access to customers, *i.e.*, it is an internet service provider (ISP). *Id.*

Plaintiff has sent Midcontinent a subpoena, with a caption under this Court, by fax, without payment for subpoena/witness fees or for the cost of Midcontinent's compliance with the subpoena. *See* Johnson Aff. at ¶¶ 4 & 5 & Ex. A. The subpoena is not signed by the Court's Clerk or Deputy Clerk. *Id.* at Ex. A. Midcontinent is without knowledge as to whether the attorney's signature, as appearing on the face of the subpoena, is sufficient to validate it, as it is unknown whether the attorney is admitted to practice before this court. *Id.* Midcontinent objects

to and moves to quash this subpoena for not only these procedural deficiencies and concerns, but also to affirmatively allow Midcontinent a reasonable opportunity to alert the potentially-involved customers to the fact that an outside party has requested the production of information identifying them as having accessed a certain location on the internet at a certain time and date (*i.e.*, IP address).

This subpoena arises from a *John Doe* action initiated in the United States District Court for the Northern District of California. *See On the Cheap, LLC, d/b/a, Tru Filth, LLC v. Does 1-5,011*, Civ. No. 10-04472 (N.D. Cal.). The Complaint in the underlying *John Doe* action shows Plaintiff is bringing an action against 5,011 unknown individuals whom it claims are violating its copyrights in a certain motion picture. *See generally* copy of *On the Cheap* Complaint, attached for the Court's convenience as Attachment #1. To protect its copyrights in its motion picture and recover damages for alleged violations, Plaintiff initiated the *John Doe* action in order to gain the knowledge of the identities of individuals whom it believes has violated its copyrights. *Id.* Plaintiff alleges that the unknown defendants have violated its copyrights by using online media distribution systems (sometimes called a "peer to peer" or "P2P" network) to reproduce copies of its motion pictures and distribute those unauthorized copies to the public. *Id.* at ¶¶ 10 & 11.

Because the underlying action is in the nature of a *John Doe* action, Plaintiff sought and received an order from the United States District Court for the Northern District of California, allowing it to undertake discovery prior to a Rule 26(f) parties' planning meeting in order to discover the identity of the unknown defendants who were alleged to have violated Plaintiff's copyrights. *See* Johnson Aff. at Ex. A.

The subpoena commands Midcontinent to produce eight of (presumably) its customers' names, addresses, telephone numbers, and e-mail addresses. *See* Johnson Aff. at Ex. A. Midcontinent's own privacy policies and statements preclude it from providing its internet customer account information to third parties without prior valid legal process. *See* Johnson Aff. at ¶ 6 & Ex. B & C. In keeping with those privacy policies and statements, Midcontinent has advised its internet customers that it will not disclose their personal information in relation to their account, without their consent, unless required to do so by legal process. *Id.* Further, Midcontinent's privacy policies and statements advise that, if it is required to so disclose internet customer account information, it will notify the customer before making the disclosure unless legally prohibited from giving such notice. *Id.*

With respect to the subpoena at issue, Midcontinent objects and moves to quash the subpoena because: Midcontinent has concerns about the procedural validity of the subpoena; Midcontinent requests the Court to order a reasonable opportunity for Midcontinent to give internet customers prior notice of the disclosure of their private information; and Midcontinent requests that the Court order appropriate compensation for such costs and burden upon Midcontinent, as a non-party to the above-captioned action.

**Legal Authorities and Argument**

Midcontinent is not a party to the California *John Doe* action. Midcontinent would respectfully request this Court to take notice of the course of action set by another United States District Court in which a similar *John Doe* action has been brought, alleging copyright violation and permitting early discovery, consisting of the service of subpoenas upon ISPs, like Midcontinent, to obtain identifying information of internet customers. In *Achte/Neunte Boll Kino Betwiligungs GMBH & Co KG vs. Does 1-4,577*, Civ. No. 10-453 (D.D.C. September 19,

2010), the parties stipulated to entry of an Order by the United States District Court for the District of Columbia, approving a Notice to subscribers regarding an issuance of a subpoena disclosure of identity. *See* copy attached for the Court's convenience as Attachment # 2.

Midcontinent would respectfully request that this Court enter an Order requiring the provision of a similar notice to customers/subscribers before Midcontinent must disclose personal account information, and Midcontinent has prepared a sample Notice for the Court's consideration. *See* copy of sample Notice attached for the Court's convenience as Attachment # 3. This Notice would not only be consistent with the Court-directed Notice entered in *Achte/Neunte*, it would be consistent with Midcontinent's privacy policies and statements, which were drafted in consideration of not only Midcontinent's concerns for its customers' privacy, *see* Johnson Aff. at Ex. B and C; but also in light of restrictions upon disclosure of customer information under federal law. *See e.g.*, The Stored Wire and Electronic Communications and Transactional Records Access Act, as modified by the Patriot Act, codified at 18 U.S.C. §§ 2701, *et seq.*; *see also* 47 U.S.C. § 551(c) (The Cable Communications Policy Act); *Arista Records, LLC v. Does 1-12*, 2008 WL 4133874 (E.D. Cal., Sept. 4, 2008); *UMG Recordings, Inc. v. Does 1-4*, 2006 WL 1343597 (N.D. Cal., April 19, 2006).

In addition to notification concerns, there are also potential privacy and/or constitutional concerns. *In re Charter Communications, Inc.*, 393 F.3d 771 (8th Cir. 2005). In *Charter*, copyright owners wanted to obtain and serve subpoenas on internet service providers (ISPs), like Midcontinent, to obtain personal account information of the ISPs' subscribers who were alleged to be violating copyrights. *Id.* at 772-73. Because the Court was able to reach its decision under a federal statute, it did not rule upon other constitutional issues, but it did state "some concern. . . . We comment without deciding that this [subpoena provision under another statute allowing for

disclosure of customer information] *may* unconstitutionally invade the power of the judiciary by creating a statutory framework pursuant to which Congress, via statute, compels a clerk of court to issue a subpoena, thereby invoking the court's power. Further, we believe Charter has at least a colorable argument that a judicial subpoena is a court order that must be supported by a case or controversy at the time of its issuance." *Id.* at 777-78 (emphasis in original). *Charter* may be distinguishable because it involved a different statutory framework as the basis for the subpoena and was not a *John Doe* action. Midcontinent brings *Charter* to the Court's attention because of the Eighth Circuit's above-quoted language about potential constitutional concerns.

Further, jurisdictional questions may remain. The United States District Court for the District of Columbia, in the *Achte/Neunte* case, not only ordered notice to subscribers before disclosure of information under subpoena, it has also required the party seeking the information to show cause why the Court would have personal jurisdiction over subscribers living outside the Court's jurisdiction. *See Achte/Neunte Boll Kino Betwiligungs GMBH & Co KG vs. Does 1-4,577*, Civ. No. 10-453 (D.D.C. September 10, 2010) (copy attached for the Court's convenience as Attachment # 4).

Additionally, procedural concerns exist. FED.R.CIV.P. 45(a)(3) addresses the matter of who may issue a subpoena, and Midcontinent does not know whether the attorney signing this subpoena is admitted to practice before this Court. FED.R.CIV.P. 45(b) requires service by delivery, and this subpoena was sent by fax. Further, without a requirement of a subpoena/witness fee or guarantee of payment for the costs of production, the subpoena stands to place an undue burden upon Midcontinent. FED.R.CIV.P. 45(c)(1) requires parties serving a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person

subject to that subpoena." FED.R.CIV.P. 45(c)(2)(B) recognizes that non-parties must be protected from "significant expense resulting from compliance" with a subpoena.

Courts which have addressed the question of discovery from non-parties "have considered a number of factors including how narrowly tailored the request is, cost, availability of the information, importance of the issues at stake, and the benefits to the parties." *Guy Chem. Co., Inc. v. Romaco AG*, 243 F.R.D. 310, 312 (N.D. Ind. 2007) (citations omitted).

> Non-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue. *United States v. Amerigroup Ill., Inc.*, 2005 WL 3111972 at *4 (N.D.Ill.2005) (citations omitted). It is clear that discovery in the hands of a non-party is subject to discovery under the Federal Rules. *See* FED.R.CIV.P. 26(b)(1); FED.R.CIV.P. 45; *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 25, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). But that does not mean non-parties must yield discovery that causes undue burdens, as evidenced by the protections in the Federal Rules. *See* FED.R.CIV.P. 26(b), (c); FED.R.CIV.P. 45(d). **Non-parties understandably object to paying the litigation costs of other parties.** *See Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir.1998); *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir.1980); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y.1996). **Simply put, it is not [the] lawsuit [of the non-party recipient of the subpoena,] and they should not have to pay for the costs associated with someone else's dispute. Not only is it fundamentally unfair for non-parties to bear the significant litigation costs of others, but also if this Court were to allow litigating parties . . . to impose such a burden on non-parties, then the likelihood of cooperation by non-parties in the future would be placed in jeopardy.**

*Id.* at 313 (emphasis added).

Thus, in *Guy Chem. Co.*, the party seeking discovery from the non-party was required to pay for the expenses involved with discovery it sought. *Id.*; *see also In re New England Carpenter Health Benefits Fund*, 2006 WL 3050806, at * 2 (C.D. Ill. 2006) ("requiring a non-party to incur what appear to be rather significant costs of complying with the subpoena as it relates to these contracts constitutes an undue burden. Unless [the party seeking discovery] is willing to pay the costs associated with this request, the subpoena is quashed as to these

remaining contracts."); *Spears v. City of Indianapolis,* 74 F.3d 153 (7th Cir.1996) ( Rules 45 and 26 give "considerable discretion" in determining whether expense-shifting in discovery production is appropriate in a given case); *Compaq Computer Corp. v. Packard Bell Electronics, Inc.,* 163 F.R.D 329 (D.C. Cal. 1995) (awarding hourly rate for in-house legal staff and for employees sitting for deposition).

This is not the first subpoena Midcontinent has received from a party seeking customers' identifying information, based upon an IP address, arising out of a *John Doe* action alleging copyright violations. *See* Johnson Aff. at ¶ 7. Previously, Midcontinent has been able to come to an agreement with a party seeking such information to allow a reasonable opportunity to give prior notice to customers that their identifying information may be produced, to allow those customers whose information has been requested to be produced a reasonable time to object before the information is produced, and to pay Midcontinent for the costs of production. *Id.* Midcontinent's process of production contemplates: locating the host IP address on the date indicated on the subpoena; sending notices to customers about the potential disclosure of their information; allowing customers a reasonable time to object before producing their information; keeping track of such customer objections and, alternatively, productions of information; dealing with customer questions and issues arising from customers' own motions to quash; and, ultimately disclosing the identifying information. *Id.* The cost of this compliance was determined to be Forty-Five Dollars ($45.00) per IP address. *Id.* Accordingly, Midcontinent would respectfully request that before it must engage in that process that Plaintiff be required to guarantee reimbursement to Midcontinent for its expenses in producing information in litigation in which it is not a party.

Finally, even though the current subpoena seeks information relating to only eight IP addresses, at this time, in the event further subpoenas are issued, Midcontinent would respectfully request the Court to not require it to process more than twenty-five addresses each month. *See* July 2, 2010 Order in *Achte/Neunte Boll Kino Betwiligungs GMBH & Co KG vs. Does 1-4,577*, Civ. No. 10-453 (D.D.C. July 2, 2010) (copy attached for the Court's convenience as Attachment # 5, ordering that Time Warner Cable Inc. would not be required to provide identifying information for more than 28 IP addresses per month, that the party seeking the information would have to pay Time Warner's reasonable costs for looking up the identifying information and notifying subscribers, and that the party seeking the information could seek additional information only with the Court's approval). Midcontinent has been asked to produce this sort of information in other actions, *see* Johnson Aff. at ¶¶ 7 & 8; and Midcontinent's regular business processes should not be unduly disrupted to provide information to such Plaintiffs in connection with subpoenas in actions where Midcontinent is not a party. *See* Johnson Aff. at ¶¶ 3, 7 & 8. Limiting the number of addresses Midcontinent must process each month would help limit such disruption when it is responding to subpoenas in multiple actions like the case at bar.

## Conclusion

Midcontinent is not a party to the California action, and it should not have to unduly bear the cost and burden of production of information for an action to which it is not a party. Under Rule 45, if the Plaintiff in the California action wants to obtain such information, it must bear the costs and burden of that production. Through its Motion to Quash and Objections, Midcontinent has taken actions it believes reasonable and appropriate to protect the privacy of its internet customers, as expressed to its customers through privacy notices and statements. In accordance with its concerns for customer privacy, Midcontinent respectfully asks the Court to sustain its

objections to the subpoena and grant its motion to quash the subpoena unless the Court requires the prior notice to customers described above for the protection of their privacy and allowing them a reasonable opportunity to object to the production of their information, requires payment to Midcontinent before imposing the cost and burden of production, and limits the number of monthly disclosures required to avoid undue cost and burden being imposed upon a non-party to an action.  Finally, Midcontinent would respectfully request the Court to consider the privacy/constitutional, case-or-controversy concerns raised in *Charter Communications*, and the personal jurisdictional problems recognized by the District Court for the District of Columbia, as set forth above.

Dated at Sioux Falls, South Dakota, this 5th day of April, 2011.

DAVENPORT, EVANS, HURWITZ & SMITH, L.L.P.

*/s/ Sandra Hanson*
Sandra Hoglund Hanson
206 West 14th Street
PO Box 1030
Sioux Falls, SD 57101-1030
Telephone:  (605) 336-2880
Facsimile:  (605) 335-3639
E-mail:  shanson@dehs.com
*Attorneys for Midcontinent Communications*

## CERTIFICATE OF SERVICE

Sandra Hoglund Hanson, one of the attorneys for Midcontinent Communications, hereby certifies that a true and correct copy of the foregoing "Brief in Support of Motion to Quash and Objections to Subpoena" was served by mail upon:

> Ira M. Siegel
> Law Offices of Ira M. Siegel
> 433 N. Camden Drive, Suite 970
> Beverly Hills, CA 90210
> *Attorneys for Plaintiff*

on this 5th day of April, 2011.

*Sandra Hanson* (signature)